UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FEDERAL INSURANCE COMPANY,

                             Petitioner,         Case No.:

      -against-

FIREMAN'S FUND INSURANCE COMPANY,     **PETITION TO COMPEL**
                                                     **ARBITRATION**

                        Respondent.

-------------------------------------------------------------------X

       Petitioner, Federal Insurance Company, by its attorneys, Rosner Nocera & Ragone, LLP,

petitions this Court pursuant to Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) to compel

Respondent Fireman's Fund Insurance Company to arbitrate an equitable contribution dispute,

pursuant to the arbitration provisions contained within the parties' respective insurance policies,

on the following grounds:

<u>**INTRODUCTION AND NATURE OF THE DISPUTE**</u>

      1.     This Petition is brought, *inter alia*, pursuant to the Federal Arbitration Act to

compel the Respondent insurer to arbitrate an insurance coverage dispute, as required under a

written agreement to arbitrate this controversy, namely the "Joint Loss" arbitration agreement

which is contained in each of the insurance policies issued by Petitioner Federal Insurance

Company (which issued a boiler and machinery/equipment breakdown policy), and Respondent

Fireman's Fund Insurance Company (which issued a commercial property insurance policy).

The parties each issued their respective policies containing such arbitration agreement to their

mutual insured located in New York County, namely Butterfield House, Inc. a/k/a Butterfield

Condo located at 37 West 12th Street, New York, New York (the "Insured" or "Butterfield").

      2.     Under the "Joint Loss" arbitration agreement provisions contained in both

Petitioner's and Respondent's insurance policies, the Petitioner and Respondent each paid their

mutual insured one-half of a disputed coverage amount. This 50% payment by the parties made their Insured whole, and required the two insurers to then arbitrate their coverage differences under the provisions of the "Joint Loss" arbitration agreement contained in each of their policies.

3.      Respondent initially participated in proceedings necessary to set up such an arbitration.  Respondent also requested and received from Petitioner modification and waiver of certain provisions in the Joint Loss arbitration agreement.   However, Respondent recently requested that the arbitration matter be dropped.  Respondent then unilaterally withdrew from further arbitration participation, belatedly asserting alleged timing requirements which Respondent had previously waived, or which could only apply to a policy coverage claim made by Respondent's own insured, and which do not apply to the equitable contribution claims being asserted between the two insurers under their "Joint Loss" arbitration agreement.

4.      Petitioner therefore requests an order compelling Respondent to select its arbitrator and arbitrate such differences, under the agreement to arbitrate contained in each policy's "Joint Loss" agreement, or that Respondent be bound by the result of the arbitration proceeding in which Respondent unjustifiably refuses to participate.

## THE PARTIES

5.      Petitioner Federal Insurance Company ("Federal") is an insurance company incorporated under the laws of the State of Indiana with its principal place of business in the State of New Jersey.  Federal is authorized to do business in New York and maintains an office at 55 Water Street in New York County.  Federal is a Chubb affiliated insurer.

6.      Federal issued to Butterfield a "Chubb Equipment Breakdown Defender" policy (sometimes called a "boiler and machinery" policy) covering certain Butterfield machinery and

equipment located at 37 West 12th Street, New York, New York, under policy number 7643-11-34 PHL, effective from June 30, 2013 to June 30, 2014 (the "Federal Policy"). A true and complete copy of the Federal Policy is annexed hereto as Exhibit "1".

7.    At all times hereinafter mentioned, Respondent Fireman's Fund Insurance Company ("Fireman's Fund") was and still an insurance company incorporated under the laws of the State of California, with its principal place of business in the State of California. Fireman's Fund is authorized to do business in New York, maintaining an office at 28 Liberty Street, New York, New York.

8.    Fireman's Fund issued a commercial property insurance policy to Butterfield under policy number NYP2006246-13, also effective from June 30, 2013 to June 30, 2014 (the "Fireman's Fund Policy"). A copy of the Fireman's Fund Policy as supplied by Fireman's Fund to Federal is annexed hereto as Exhibit "2".

## JURISDICTION AND VENUE

9.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the amount of $75,000, exclusive of interest and costs, and is between citizens of different states.

10.    This controversy arising from a commercial contract and transaction involving commerce is properly brought before this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, which provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

11.    Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the controversy and underlying insurance claims occurred in this District, and Butterfield's property is situated in this District.

## THE MUTUAL INSURED'S UNDERLYING LOSS

12.    The mutual insured under both policies is Butterfield, which during the above policy periods owned and operated a 102-unit residential building located at 37 W. 12th Street, New York, NY 10011.  At all relevant times, the Butterfield building was insured under both the Federal Policy and the Fireman's Fund Policy, subject to their terms.

13.    On or about January 21, 2014, Butterfield submitted a claim to Federal for machinery and equipment damage sustained when a New York City water main at the intersection of 5th Avenue and West 13th Street burst and flooded the Butterfield parking garage and basement areas.

14.    Butterfield also submitted a claim to Fireman's Fund in January 2014 seeking recovery under the Fireman's Fund Policy for property damage in the same garage and basement areas, caused by the same water main break.

15.    After adjusting and investigating the claim, Federal determined that the Federal Policy provided coverage for certain damage to the Insured's equipment caused by its breakdown, such as breakdown of certain elevator and mechanical equipment.  Upon information and belief, Fireman's Fund, under its policy which provided commercial property insurance coverage, also adjusted and paid for certain Butterfield property damaged in the water main break.

16.    Federal and Fireman's Fund each paid their mutual Insured (Butterfield) for the damage they each acknowledged was covered under their respective policies, but the parties

were unable to agree as to approximately $700,000 in other damage which Butterfield claimed was covered under either the Fireman's Fund or Federal policies ("the Contested Damage").

17.     Federal and Fireman's Fund were unable to resolve their dispute regarding which policy should cover the Contested Damage.  On or about July 10, 2014, the Insured demanded, under both policies, that Federal and Fireman's Fund each pay the Insured 50% of the Contested Damage pursuant to the "Joint Loss" arbitration agreement in each insurer's policy, with Federal and Fireman's Fund to thereafter arbitrate their coverage differences involving the Contested Damage (see Joint Loss demand letter from Insured, Ex. "3").

18.     Federal, Fireman's Fund, and the Insured agreed that each insurer would pay $349,684.53 for the Contested Damage pursuant to the "Joint Loss" agreement in each policy.

19.     On July 16, 2014, Federal paid Butterfield $349,684.53, its 50% share of the Contested Damage.  This amount has not been refunded or reimbursed by Fireman's Fund to Federal.

20.     Fireman's Fund advised Federal that it had also paid Butterfield its 50% share of the Contested Damage.

## THE JOINT LOSS ARBITRATION AGREEMENT

21.     Both the Federal Policy and the Fireman's Fund Policy contained "Joint Loss" arbitration agreement provisions, which provided as relevant herein that when both policies provided at least some coverage for a loss, but the two insurers could not entirely agree on the extent of their respective coverage, the insurers would each pay their mutual insured one half of the amount in dispute and then submit their differences to arbitration to decide which policy should cover the disputed portion(s).  This "Joint Loss" agreement, requiring arbitration between

a property insurer and an equipment breakdown/boiler and machinery insurer, is common in the insurance industry.

22.    The "Joint Loss Adjustment" provision in the Federal Policy sets forth:

A.  This condition is intended to facilitate payment in the event of loss or damage to covered property that is covered by:

    1.  a commercial property insurance policy issued by a different insurer [Fireman's Fund]; and

    2.  this insurance [Federal Policy],

when there is agreement between the insuring companies as to the existence of coverage, but a disagreement as to the amount of the loss or damage to be paid by each insuring company.

B.  The [payment and arbitration] provisions of paragraph C. of this condition apply only if all of the following requirements are met:

    1.  the commercial property insurance [Fireman's Fund] policy contains a provision with substantially the same requirements and procedures as contained in this condition;

    2.  the damage to covered property was caused by a peril for which both we and the other insurer admit to some liability for payment under the respective policies;

    3.  the total amount of the loss or damage is agreed upon by you, us and the other insurer;

    4.  we and the commercial property insurer disagree as to the amount of loss or damage that each should pay that is attributable to a loss to property covered under both policies; and

    5.  the named insured is the same under the respective policies.

C.  If the requirements listed in paragraph B. above are satisfied, we and the commercial property insurer will make payments as follows:

    1.  we will pay, upon your [Butterfield's] written request, the entire amount of loss or damage that we have agreed upon as being covered solely by this insurance and one-half (1/2) the amount of loss or damage about which we and the other insurer disagree;

2.  the commercial property insurer [Fireman's Fund] will pay, upon your written request, the entire amount of loss or damage agreed upon as being covered solely by the commercial property insurance and one-half ( 1/2) the amount of loss or damage about which we and the other insurer disagree;

\* \* \*

6.  We and the other insurer will submit our differences to arbitration within 90 days after loss payment, and you agree to cooperate with any arbitration procedures. There will be three arbitrators; one will be appointed by us, and the second will be appointed by the other insurer. Then, the two arbitrators will select a third arbitrator. If they cannot agree, either may request selection be made by a judge of a court having jurisdiction. A decision agreed to by any two of the three arbitrators will be binding on us and the other insurer. Judgment on any award may be sought in any court having jurisdiction.

(See Ex. 1 at CH00052-CH00053.)

23.    The Fireman's Fund Policy contains a similar "Joint or Disputed Loss Agreement" with substantially the same provisions as the Federal Policy. The "Joint or Disputed Loss Agreement" of Fireman's Fund sets forth, in relevant part, as follows:

A.  This endorsement is intended to facilitate payment of insurance proceeds when:

1.  Both a boiler and machinery policy [Federal Policy] and this commercial property policy [Fireman's Fund Policy] are in effect;

2.  Damage occurs to Covered Property that is insured by the boiler and machinery policy and this commercial properly policy; and

3.  There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

\* \* \*

7

C. The provisions of this endorsement apply only if all of the following requirements are met:

    1.    The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;

    2.    The damage to the Covered Property was caused by a loss for which:

        a.  Both the boiler and machinery insurer(s) and we admit to some liability for payment under the respective policies....

D. If the requirements listed in Paragraph C. above are satisfied, we and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

    1.    We will pay, after your [Butterfield] written request, the entire amount of loss that we have agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

    2.    The boiler and machinery insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of the loss that is in disagreement.

E. Arbitration

    1.    If the circumstances described in Paragraph C.2.a. exist and the boiler and machinery insurer(s) and we agree to submit our differences to arbitration, the boiler and machinery insurer(s) and we will determine the amount each will pay and will pay the insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

                          \* \* \*

    3.    You agree to cooperate with any arbitration procedures.

        There will be three arbitrators: One will be appointed by us, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has

jurisdiction.

F. Final Settlement Between Insurers

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s).

(See Ex. 2 at FF052-FF052 and FF131-FF132.)

24.     As reflected in Exhibit "3", in July 2014, Butterfield, as the Insured under both policies, invoked the "Joint Loss Adjustment" provision, and the "Joint or Disputed Loss Agreement" provision, as set forth in the Federal Policy and the Fireman's Fund Policy, respectively (collectively the "Joint Loss Agreement").  In accordance therewith, Federal and Fireman's Fund each paid 50% of the Contested Damage and were required to arbitrate their responsibility for the Contested Damage under their respective Policies.

## CAUSE OF ACTION FOR ORDER COMPELLING ARBITRATION PURSUANT TO 9 U.S.C § 4

25.     Petitioner repeats and realleges the allegations set forth in Paragraph 1 through 24 above as if fully set forth herein.

26.     By virtue of the Insured having invoked the "Joint or Disputed Loss Agreement" in the Fireman's Fund Policy, and the "Joint Loss Adjustment" provision in the Federal Policy, pursuant to which each insurer paid one-half of the Contested Damage arising from the water main break, an arbitrable dispute arose between Federal and Fireman's Fund which was required to be arbitrated under the written arbitration agreement contained in the above referenced Joint Loss Agreement provisions of each insurer's policy.

27.     Fireman's Fund agreed to arbitrate and was bound to arbitrate its dispute with Federal concerning the Contested Damage. Fireman's Fund, its agents, and its counsel, requested and received modification and waiver of certain requirements related to the arbitration.

Fireman's Fund also agreed to certain procedures which the parties discussed to streamline and economize the arbitration process, such as agreeing to use a single arbitrator instead of three. The parties also needed to decide upon arbitration rules and an arbitration forum, since the Joint Loss Agreement in each policy did not specify any arbitration rules or any governing body to administer the arbitration.

28.     As part of this collaborative arbitration process between the parties and their counsel, the parties had either complied with and/or had waived, both in writing and by their conduct, and/or were estopped to assert, the 90 day time provision contained in each policy for the arbitration process to commence.  Within 90 days of the parties' respective loss payments, Fireman's Fund and Federal commenced the overall arbitration process.  Fireman's Fund and its counsel had been cooperating with Federal and its counsel to arrange for and schedule the arbitration to resolve this matter, well past the 90 days mentioned in each policy.  However, on or about June 27, 2016, Fireman's Fund's counsel advised Federal's counsel that Fireman's Fund was withdrawing from the process, was no longer willing to arbitrate this matter, and preferred to simply drop the dispute concerning the Contested Damage.

29.     Fireman's Fund is obligated to arbitrate the issues involving the Contested Damage pursuant to the "Joint or Disputed Loss Agreement" provision contained in its Policy, which, in combination with the "Joint Loss Adjustment" provision in the Federal Policy, constitutes a written arbitration agreement with Federal, but has breached such obligation, including without limitation by its acts and conduct described above.

30.     The agreement to arbitrate is enforceable by this Court pursuant to the Federal Arbitration Act (9 U.S.C. §§ 2 and 4).

31.     This Court is further authorized and requested, pursuant to 28 U.S.C. § 2201(a), to enter a declaratory judgment: (i) that Respondent is required to abide by the foregoing agreement to arbitrate, and (ii) that any issue raised by Respondent as to alleged time limitations affecting the arbitration, are to be determined by the arbitrators.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

A.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that an agreement to arbitrate exists between the parties under the "Joint Loss" provisions of their respective policies which is enforceable by this Court.

B.      Enforce the arbitration agreement between the parties and order Respondent to select its arbitrator and proceed with the arbitration of this matter under the Joint Loss Agreement, or otherwise be bound by the result in arbitration, pursuant to Section 4 of the Federal Arbitration Act (9 U.S.C. § 4).

C.      Together with such other and further relief as this Court may deem just and proper, and for the costs of this application.

Dated: New York, New York
       October 7, 2016

                                        ROSNER NOCERA & RAGONE, LLP

                                        By: _____
                                             John A. Nocera
                                             John P. Foudy
                                             Justin V. Buscher
                                        Attorneys for Petitioner
                                        Federal Insurance Company
                                        61 Broadway, Suite 1900
                                        New York, New York 10006
                                        (212) 635-2244